14-0188 K&R&G Excavation v. Workers' Compensation May it please the court, Mike Baggett on behalf of the appellant K&R&G Council. This case is here on appeal regarding the commission decision overturning Arbitrator Falcioni's award of a wage differential award in this case. Arbitrator Falcioni heard the testimony in this matter and held that based on the petitioner's restrictions that he was a wage differential under Section 8D1. He also held that the petitioner failed to cooperate in vocational rehabilitation and awarded wage differential benefits from the last date that the petitioner was seen by the respondents' vocational counselor. Which in this case was March of 2009, March 20th. The commission overturned Arbitrator Falcioni's decision holding that the petitioner was a permanent total disability. In the decision, the commissioner relied on a couple of things. First, it interpreted Arbitrator Falcioni's decision to be a permanent total disability decision. In reviewing Arbitrator Falcioni's decision, you will see in numerous instances in reviewing his decision that it's not the case. The case is the arbitrator held that the petitioner was a wage differential under Section 8D1. It's in his body of the decision as well as the order that was entered in this case. I am uncertain how the commission could rely upon Falcioni's decision being a permanent total. It's not the case. Also in the award, it relies solely on the medical opinion of Dr. Mayo Ford, dated July 19, 2010, to find that the petitioner was a permanent total disability. When we go into the facts of the case, first and foremost, going to whether or not the petitioner is a permanent total disability, the first argument, the easiest argument, is that the petitioner has been working as a pizza delivery person for some time now. The record is undisputed to the fact that the petitioner would attend or go to Allen's Pizzeria and he would deliver pizzas. He would go anywhere between five and seven hours a day and work three to four days a week. But he volunteered to do the work, right? He was only paid tips. Well, volunteering... Tell us that in and of itself means that there is regular work available for him. I would say yes, Your Honor, because pizza delivery people is a job. If you're a pizza delivery person and you're involved in an accident, it's going to be a worker's compensation case. He can say he volunteered. He can say that. But the truth is, he was delivering pizzas as a job. There's no other way you can look at it other than being a job. If it looks like a job, if it smells like a job, it's a job. So, in the very foremost, as being weighed by a permanent total, this guy is already working, the testimony is clear about it, it's undisputed. He testifies to the fact that he's doing this job at Allen's Pizzeria as a delivery person. I've got to ask you a question about your assertion that the only medical evidence to support the permanent total is Dr. Mayo Ford's. You've got Dr. Oken, who modified the claimant's work restrictions, added the requirement that the claimant lay down for 15 minutes every hour. Then Dr. Kamel, a pine claimant, had reached MMI but would need ongoing treatment for pain and would be unable to work. In addition, Kamel testified that claimant's conditions were permanent. Beyond the point of the limitations, including the requirement he laid down for 15 minutes, which rendered him unable to work on a regular, full-time basis. So, isn't that medical support for the commission's decision? That's not, let me clarify for your honor. I said that they relied solely on the Mayo Clinic. It's in their decision that they relied on the July 19, 2010 report. They had the opportunity to put any type of testimony or any type of evidence into their decision. They could have, they didn't. Well, can we affirm on any basis that's clear? Well, going back to the conversation I had, there's clear evidence here that the petitioner was working before the, he's still working as a police delivery person, as we sit here today. Now, going back to the facts of the case, let's take it through its totality. If you look at Dr. Mayo's, Ford's, opinion, she is not applying that he's an MMI. She's applying that he's additional physical therapy to increase strength and flexibility. So, if you assume, if you rely on what the commission relied upon, that they based their opinion on Dr. Mayo Ford, then he's not an MMI. There's been additional treatment recommended to cure his condition, to increase his flexibility and increase his mobility and his strength. So, you can't have it both ways. You can either go to what Arbiter Falcioni said, who reviewed all the testimony and all the doctors, and relied upon the opinions of the treating surgeon, or if you rely on Dr. Mayo Ford, as the commission did, he's not an MMI yet. This is showing he needs additional treatment for flexibility, building strength, and mobility. Julia Bowes and Entenberg, they're not physicians, but did they not testify that no work would be available for claimant? Is that a fair accusation? They testified that, depending on which of the many doctors you look at, and which of the testimony that is that you rely upon. Well, did they testify, that's the question, not what doctors you looked at. Did they testify that no work would be available for claimant, yes or no? They testified both ways, Your Honor. They testified both ways. They testified, if you look at the restrictions that were placed on Dr. Mather, which is the one that Dr. Falcioni relied upon, there would be work available in the labor market for him to work. If he has to lay down for 50 minutes every hour, they didn't testify that no work would be available for claimant? Your Honor, they did. They also testified that if you look at the restrictions of Dr. Mather, there is work available, which is what Arbiter Falcioni relied upon in his decision. And going back to what the petitioner is actually doing, he testifies, which is undisputed in this case, that he's been delivering pizzas for Al's Pizzeria for a period of time. It's not a matter of one or two hours, he's doing up to seven hours a day. He's doing it multiple days of the week. He's called in to fill in and to do his job. He can say he's volunteering all he wants, Your Honor. He's talking about up to so many hours a day, up to so many days a week. And is there anything in the record that gives exactly how many days he did work and when? The record indicates anywhere between two and... I guess my question is, were there weeks he worked one day for three hours, or... The testimony is general in the fact that he worked two or three days a week, he was called in occasionally to work, and he worked up to seven hours any given day. So, he can characterize it as volunteer work, but he's doing a job. This is a job that people get paid for. It's a job that people earn a living on. So he can say it's volunteer work, but it's a job. There's no other way you can indicate this other than being a job. If this was on the other foot, and we're looking at this as a... Whether that's an employee-employee relationship, I'd be laughed out of this court if I said that Mr. Porta was a volunteer and not an employee. So he can characterize whatever he wants, but the truth is, he was working. Let's assume that... I think it's a question about whether it's an employee-employee relationship. It's a question about whether or not that proves that there's a reasonably stable labor market available for him. And you say make a living, but, you know, again, we don't have any clear record here of how often he worked or what he made. And he was working just for tips. I mean, the person wasn't paid by the hour or anything like that, right? Right. At least, that's what the testimony was, correct. So that's it? He's making a living? That's a job he's going to make a living at? Well, it also goes to his own actions as far as what rehab goes. If you look at what the arbitrator indicated, Mr. Porta failed to cooperate with Julie Bowes in doing any job search. He failed to address appropriately with interviews. He failed to apply for positions. He indicated he would not do any type of work that involved a computer. He would not do any work involving office work. And he wouldn't even be a Walmart greeter because it was beneath him. How does the arbitrator compute the wage differential payment of $9.6935 a week? He based it, his decision indicated that, in his opinion, the petitioner could make a living making $12 an hour at 40 hours a week. Was there any evidence of that? What's that? Was there any evidence of that? The evidence was that both counselors indicated that he could earn that living. I think he based his opinion on what Julie Bowes indicated. So his opinion was based on $12 an hour and 40 hours a week. Counsel, I'm confused by something that you indicated before and that is contained in your brief. And that is the statement or the argument that simply because Mayor Ford prescribed physical therapy that that should lead to the conclusion that this was not a permanent injury. Do you have any authority to point us to that would support that statement? Because it seems to me that doctors all the time order physical therapy to assist a patient who may have suffered a permanent injury. They order physical therapy in order to promote flexibility or strength so that they don't worsen. So that they at least maintain where they're at. The authority is the case law I quoted in my brief, Your Honor. As far as what is indicated as NMI. In this circumstance, this is not something that is used to stabilize a condition which is what is defined as NMI. She's actually treating him and prescribing physical therapy to improve his condition. And if you look at the opinion itself, nowhere in that opinion that Dr. Mayor Ford writes says that he is a permanent total disability. It says he cannot work and has a permanent disability. Which is any workers' compensation case where there is an injury, there is a permanent partial disability settlement. There is a permanent disability that is indicated in any settlement in the workers' compensation. So going back to Mayor Ford, there's no indication in what she says that he is a permanent total disability. And the fact is she's prescribed additional treatment to help cure his condition. So he's not stabilized under the terms of NMI. He's still looking for additional treatment. So depending on, if you go by what the commission says, this is not a case of where the petitioner said NMI and it's a perm total. This should be sent back down to the commission to be addressed whether or not additional treatment is necessary and what that is. And when he actually reaches NMI. If you rely on what Arbitrator Falcioni said, then the issue is whether or not it's a perm total. And Arbitrator Falcioni indicates that it's not a perm total. It's a wage differential based on the fact that he was working. Based on the fact that he refused to cooperate with Vocational Rehabilitation. The fact that he wouldn't take a job as a Walmart greeter. The fact that he wouldn't dress appropriately for any interviews. The fact that he wouldn't apply for jobs. The fact that he would delay for positions that were sent to him by the vote counselor. The fact that he didn't participate in any sense of the word as far as a legitimate Vocational Rehabilitation. So it's either what Falcioni said, where we're looking at a wage differential. Or if you go to what the commission said, which by the way was a split decision. If you look at what the stat said, they wouldn't even buy what, that he's even a wage differential. They'd hold him at a PPD at 50% of a person. So you have a commission decision that is wrought with errors to begin with. And that indicates that they're relying on an opinion that doesn't support what they're relying upon. You spent time emphasizing his work for Alice Pizza as evidence that he's not permanently and totally disabled. I have a response to this quote from the case of E.R. Moore v. Industrial Commission. Quote, evidence that the employee has been or is able to earn occasional wages or perform certain useful services neither precludes a finding of total disability nor requires a finding of partial disability. Isn't that exactly what he's doing when he volunteers for Alice Pizza? Well, it's our position he's not volunteering to begin with. He's not volunteering? That's our contention. He's actually getting paid for his position. How is he getting paid? He's getting tips from people who he delivers pizzas to. He's not getting paid by the employer. He's getting tips from delivering pizza. That's income. Okay, so he's working occasional, as the Moore case says, he's occasionally earning wages. Okay, so Moore says that doesn't include finding a permanent disability. That's why I like this. But I think this is the circumstance where he's doing more than just, you know, he's doing actual employment, your honor. He's actually working a job. There's no other way you can describe it. Well, is there any evidence in the record as to how often he did this job from the time he started until the time of the hearing, how many hours he worked a day, and how many days a week he worked? The testimony was he would work anywhere between two to three days a week up to seven to eight hours a day. All right, so nobody got any records, there were no records of anything like this? Not that I'm aware of, your honor. Nobody brought in the owner of Al's Pizza or whatever it is to ask him how often this guy worked? That is correct. Claimant testified he was going to Al's Pizza to socialize and receive a free meal. That was his testimony, right? He also testified that he would work two to three days a week and he would deliver pizzas and he would come in to fill in positions when they were needed. He could argue under the occasional wages doctrine. So what? But he was working more than just occasionally, your honor. He was working two to three days a week. He was coming in and doing seven to eight hours a day. That's true. Again, you're saying this, but there's no evidence to support that argument. His testimony says that. He was working seven days. Every day he worked, he worked seven hours, right? He said two to three days a week, up to seven to eight hours a day. Up to. Correct. There's a difference. He could have worked three or four hours. He could have worked one hour. We don't know. If Al would have testified, he might have said, I wouldn't hire a guy, but if he wants to come and work for free for tips, it's okay with me. We don't know, right? Well, we don't know, your honor. But the point is it doesn't change the fact that he's doing a job. Do we know how much money he earned in tips? No. Anybody ask him? No. I mean, if he worked seven hours and earned two dollars, we wouldn't suggest that he's engaged in gainful employment, would we? Well, if you take the totality of what this case has been about, looking at all the different areas of the case law, and what Operator Felicioni indicated, Felicioni indicated that he was capable of doing a job that was $12 an hour, making 40 hours a week, based on his findings and his review of the petitioner's testimony and the credibility of the petitioner. What did the commission find? Well, the commission relied upon Dr. Mayo, Ford's opinion that does not indicate that he's reached MMI or that he's a perm total. So, I mean, either way you look at it, there's something wrong with the commission's decision. And again, the commission's decision was a split decision where one of the commissioners indicated he was not a perm total, not a wage differential, and was at a permanency at 50% loss of a person. You know what we say about dissents? I'm sorry? You know what we say about dissents? I don't want to know. They're generally very interesting to the writer and the writer's family. It was a dissent, that's all it is. I mean, it's not the opinion of the commission. I understand, but it also goes to the whole issue of this case, Your Honor, regarding the commission's decision. Counselor, your time is up. Thank you. You've gone way beyond. You'll have time in the box. Thank you. Counselor, you may respond. May it please the Court, good afternoon. My name is Tyler Berberich. I represent the petitioner in this case, Nicholas Porro, counsel. To address a few of the things that counsel brought up during his argument, the petitioner in this case is both physically and psychologically permanently totally disabled. The decision that counsel cited from arbitrator Falcioni was inconsistent internally. Arbitrator Falcioni specifically says more than once that the petitioner is permanently and totally physically and psychologically disabled. That's in his decision. And then he awards a wage differential. So when the commission wrote their decision, they say in their decision, we agree with arbitrator Falcioni's statement that the petitioner is permanently and totally disabled, but we change his wage differential award to a permanent total award. So that is why the commission's decision addresses arbitrator Falcioni's decision in that manner, because his decision was inconsistent. As far as the work that counsel was referencing at Alice Pizza, the petitioner testified in its unrebutted testimony that he goes into Alice Pizza to avoid isolation because he feels like those people are family to him because he's hanging out with those people. He goes in anywhere from one to three days a week and only makes deliveries when it's busy. There's no evidence as to how many deliveries he makes, how much money he was earning. He essentially goes in and hangs out, and if it gets busy, they let him deliver pizza and keep the tips. At most, those are occasional learnings. There's certainly no evidence anywhere in the record that what he's doing at Alice Pizza represents any... Any regular, ongoing employment. Absolutely. And it is not evidence of a stable labor market for this petitioner. The manifest weight of the evidence certainly supports the commission's decision that he's permanently, totally disabled. The commission had their choice of physicians' opinions they wanted to go with here, and it is the commission's jurisdiction to weigh the evidence and determine which evidence they find most persuasive. The commission chose to go with the opinion of Dr. Mayo Ford. They could have easily gone with the opinion of Dr. Schmell that says that the petitioner cannot work regularly on a full-time basis. They could have gone with the opinion... and agrees with the restrictions given by Dr. Oken. They could have gone with the opinion of Dr. Oken that gives severe, permanent restrictions, which both vocational counselors testified would knock this guy out of any reasonably stable labor market and make him permanently, totally disabled. They could have gone with the opinion of the psychologist Dr. Slutsky, who also says that the petitioner is psychologically disabled and unable to work. They chose to go with the opinion of Dr. Mayo Ford. There's evidence in the record that supports their decision and is certainly not against the manifest weight of the evidence. Finally, Your Honors, I'll just address what counsel brought up about the date that Dr. Mayo Ford gave her opinion. It is also the commission's jurisdiction to determine when a petitioner's condition has stabilized. They chose to use the date that Dr. Mayo Ford gave her opinion regarding the permanent disability, and that was the last date of treatment prior to the hearing in this case. So, the commission's decision that the petitioner in this case is permanently, totally disabled from both a physical and a psychological standpoint, based upon Dr. Slutsky's opinion, based upon the opinions of Dr. Schmel and Dr. Oken, and the opinion that the commission cites from Dr. Mayo Ford, is certainly within the manifest weight of the evidence and should be affirmed in its entirety. Are there any questions? I don't believe there are. Thank you, counsel. Thank you very much. Counsel, you may reply. Referring to Moore, I quoted Moore in page 17 of the brief, and Moore also says that, conversely, if an employee is qualified for and capable of obtaining gainful employment without seriously endangering health or life, such an employee is not totally and permanently disabled. That wouldn't fit here. Sure it would. He's doing a job. He's doing a job that people are capable of. You didn't quote him. Conversely, if an employee is qualified for and capable of obtaining gainful employment without seriously endangering health or life, such an employee is not totally disabled. I mean, do you actually think that delivering pieces occasionally when it's busy is gainful employment? We don't know how much he made. It's tips only. And it's a job, Your Honor. Here's what you're overlooking. Tell me if my logic is wrong here. Gainful employment. He's getting not a dollar of compensation for Mel's Pizza directly, correct? Allegedly, yes. And if he gets no tips from delivering the pizzas, does he have gainful employment, according to you? Gainful employment? If he gets no tips. He gets nothing. But, Your Honor, somebody who has done pizza delivery, your money isn't getting the tips. Whatever you receive from the pizzeria is minimal compared to what you receive in tips. Yeah, but this is all speculation. We don't know that he's going to make... On any given day, you can't guarantee he's going to make a dime. But here's the point. Your Honor, this is the whole point. I'm sorry, but this is a man who claims he's permanently and totally disabled. He's out delivering pizzas and says, I'm volunteering. Your Honor, that is work. People make a living doing that. And he's saying he's not able to return to work in a gainful employment. You've got the whole case that says gainful employment. We can argue all afternoon, but getting tips, maybe getting tips, maybe not, I don't know if that qualifies as gainful employment. Let me try this one. Whose burden was it to establish whether his employment was gainful or not? Whether his work at Al's Pizza was gainful or not? Whose burden was that? Well, the burden was on the attorney who tried this case who relied on the fact that the petitioner failed to cooperate with vocational rehabilitation in the fact that he failed to apply for jobs, he failed to address appropriately for interviews, he failed to follow up appropriately, he wouldn't get a GED, he wouldn't work in an office, he wouldn't work on a computer, and he wouldn't work as a Walmart waiter because it was beneath him. That was the crux of the argument at trial, Your Honor. That's what they based their opinion on. And that's what Arbitrator Falcioni held in his decision. So, going back to what we talked about at the commission level, relying upon Dr. Mayo-Ford is either remanding back to the commission to find out what additional treatment is necessary as petitioner's not an MMI, or relying on what Arbitrator Falcioni said where the petitioner is a wage differential. Thank you. Thank you, counsel. Thank you, counsel, for all of your arguments in this matter. It will be taken under advisement and written disposition.